569 So.2d 101 (1990)
Delores Pitre ORTEGO and Sam Levy Ortego
v.
FIRST AMERICAN TITLE INSURANCE COMPANY, et al.
No. 89-CA-2125.
Court of Appeal of Louisiana, Fourth Circuit.
October 11, 1990.
*102 Stephen A. Fritch, New Orleans, for plaintiffs/appellants.
Stephen D. Marx, Steeg and O'Connor, New Orleans, defendant/appellee.
John F. Rowley, Dist. Atty., Marcel Gueniot, Asst. Dist. Atty., Chalmette, for defendant/appellee The Bd. of Com'rs for the Lake Borgne Basin Levee Dist.
William P. Schuler, Asst. Dist. Atty., Chalmette, for defendant/appellee St. Bernard Parish Police Jury.
*103 Before WARD, ARMSTRONG and BECKER, JJ.
BECKER, Judge.
This appeal centers on the right of defendant, Lake Borgne Basin Levee Board, under L.S.A.-R.S. 38:113, to enter plaintiffs' property, in order to maintain and clean the drainage canal known as the CD canal or the Twenty Arpent Intercepting Canal. Plaintiffs seek review of the trial court's decision dismissing their suit for damages. Included as defendants were the Lake Borgne Basin Levee District, First American Title Insurance Company (the title company which issued title insurance to plaintiffs' mortgagee), Steven and Gwen Cavalier (the vendors), Eugene I. Estopinal and Associates, and Steven Estopinal (the surveyors of the property), the St. Bernard Parish Police Jury, and the St. Bernard Parish Department of Public Works.
Plaintiffs, Sam and Delores Ortego, purchased the property in question from Gwen and Steve Cavalier on September 18, 1979 by credit sale. Title insurance was obtained through First American Title Insurance Company. The records reflect that only a mortgagee's policy was purchased by the plaintiffs.
In April 1982, plaintiffs were notified by the Lake Borgne Basin Levee District that it would be necessary for the Levee District's employees to enter onto plaintiffs' property to perform certain work on the adjacent canal. Subsequently, the Levee District removed plaintiffs' fence next to the canal and erected a temporary fence while the work progressed. When the maintenance work was completed, the Levee District installed a new fence at the original location.
The survey attached to plaintiffs' 1979 act of sale showed no servitude or easement in favor of the Levee District on their lot. The mortgagee's title insurance policy obtained at the closing also failed to show the legal servitude imposed by the Levee District. The vendors, Gwen and Steve Cavalier, had no knowledge of, and therefore did not disclose, the existence of said servitude to the plaintiffs prior to or after the act of sale.
However, in May 1967, the Board of Commissioners for the Lake Borgne Basin Levee District passed a resolution establishing the legal servitude granted under L.S.A.-R.S. 38:113 necessary for the maintenance and improvement of the drainage capacity of the Twenty Arpent Intercepting Canal. The statute grants the drainage district a legal servitude of one hundred feet on each side of the drainage channel. The resolution was duly recorded in the conveyance records for the Parish of St. Bernard at COB 98, Folio 72. A copy of the resolution was sent by certified mail to the then owner of the property, Sterling Homes, which Sterling received on May 17, 1967.
During the trial, plaintiffs negotiated a settlement with Eugene I. Estopinal & Associates, and Steven Estopinal, and dismissed them from the action. After a full trial on the merits, the trial court found that the Levee District had the right to enter onto plaintiffs' property under R.S. 38:113, and that plaintiffs sustained no damage from the Levee District's maintenance work on the drainage channel. The trial judge succintly stated his reasons for judgment:
"Plaintiffs purchased a house and lot adjoining the Twenty Arpent Intercepting Canal in 1979. A servitude to maintain that canal extended on part of plaintiffs property. That servitude was not indexed under previous owners in the chain of title. In 1982, in order to clear out the canal, a fence was temporarily removed from plaintiffs property and a temporary fence erected and maintenance work done. Upon completion, plaintiffs fence was replaced with a new fence. Plaintiffs did not then, or now ever live on the property in question.
Conclusion of Law: Parish of St. Bernard Plaintiff contends that The Parish of St. Bernard has a duty to search public records and confirm the existence and location of right of way bearing on property to be subdivided. The Court finds no such duty exists, and even if it did, *104 any search of the records would not reveal the servitude. Any responsibility to maintain parish records lies with the Clerk of Courts office, separate from The Parish of St. Bernard and not a party to this lawsuit.

First American Title Insurance Company First American Title Insurance Company was not the insurer of the plaintiffs, but rather issued a policy of title insurance to the Ortego's mortgagee on the property securing the loan. Only the mortgagee is insured under this policy, and no benefits are conferred on the plaintiffs.

Lake Borgne Levee DistrictThe Lake Borgne Levee District has a right to use all property bounding drainage canals in its jurisdiction to a distance of 100 feet on each side of the channel and to maintain those canals under L.S.A.-R.S. 38:133.
The rights granted under the statute are not right(s) [sic] of ownership, but limited rights of servitude only to preserve the efficiency of the canal. The Lake Borgne Levee District has never claimed ownership of, or "taken" any property of the plaintiffs.
The resolution by the Levee District granting the servitude was duly recorded in the parish records (COB 98, Folio 72) and notice was mailed to plaintiffs predecessor in Title in 1967. When The Levee District came on plaintiffs property in 1982 it had a lawful right to do so, and when it departed the property it fulfilled its obligation to plaintiffs to repair any damage done to that property. The work done at that time did not widen the canal or in any other way permanently encroach on plaintiffs property. Lake Borgne Levee District did not breach any duty owed by them to plaintiffs."
On appeal, plaintiffs argue that the trial court committed manifest error in its findings, and misapplied the applicable principles of law. Plaintiffs specifically assign the following errors:
(1) The trial court erred in ruling that the Levee District had a right to impose a legal servitude over appellants' property rather than holding the Levee District responsible to plaintiffs for appropriate damages, court costs and interest;
(2) If the Levee District has a right to impose a servitude, the trial court erred in not awarding plaintiffs compensation due to the Levee District's actual exercise of its servitude;
(3) The trial court erred in not holding plaintiffs' vendors liable in warranty under the 1979 credit sale;
(4) The trial court erred in failing to award general damages and attorneys' fee to the plaintiffs; and
(5) The trial court erred in holding that plaintiffs could not enforce their contract of title insurance in favor of their mortgagee.
L.S.A.-R.S. 38:113 provides that
"(t)he various levee and drainage districts shall have control over all public drainage channels within the limits of their districts and for a space of one hundred feet on each side of the channel, selected by the district and recommended and approved by the Department of Public Works, whether the drainage channels have been improved by the levee or drainage district, or have been adopted without improvement as necessary parts of or extensions to improved drainage channels, and may adopt rules and regulations for preserving the efficiency of the drainage channels."
The statute, by its terms, merely authorizes a levee or drainage district to preserve and maintain the efficiency of public drainage channels within its districts. Undoubtedly, the local governing body may exercise its power to prevent obstruction of the channels and to perform ordinary maintenance necessary for the efficient operation of the canals and ditches. When necessary for these purposes, the authorities may send their workers and equipment onto private property along public drainage channels for a space of one hundred feet on each side of the channel. The legislative aim was to enable levee and drainage authorities to keep their districts clean and in good working order. Terrebonne *105 Parish Police Jury v. Matherne, 405 So.2d 314, 317 (La.1981), cert. denied, 456 U.S. 972, 102 S.Ct. 2234, 72 L.Ed.2d 845 (1982); Dugas v. St. Martin Parish Police Jury, 351 So.2d 271 (La.App.3rd Cir.1977), writ denied, 353 So.2d 1046 (La.1978); Grayson v. Commissioners of Bossier Levee District, 229 So.2d 139 (La.App.2nd Cir.1969); Scott v. Red River-Bayou Pierre Levee & Drainage District of Louisiana, 7 So.2d 429 (La.App. 2nd Cir.1942).
The statute does not authorize the taking or damaging of private property without just compensation or without due process of law. La.Const.Art. I, Section 4; Terrebonne Parish Police Jury, supra.
Further, certain prerequisites must be met before a levee or drainage district may take advantage of the legal servitude. Terrebonne Parish Police Jury, supra; Whipp v. Bayou Plaquemine Brule Drainage Board, 476 So.2d 1042 (La. App.3rd Cir.1985). First, the drainage channel must have been either previously improved by the drainage district or adopted without prior improvement as a necessary part of or extension to improved drainage channels. Second, the drainage channel must be a public channel. Lastly, the channel must be selected by the drainage district and recommended and approved by the Office of Public Works. Whipp, supra at 1044, 1045.
In the case at bar, there is no question that the drainage channel, the "CD Canal" or "Twenty Arpent Intercepting Canal," was a part of the drainage system for the Lake Borgne Basin Levee District. The canal was part of the drainage system established by Lake Borgne Basin Levee District's predecessor, the Chalmette Back Levee District. A map, denoted as L.D. 81268-1, and attached to the 1967 resolution shows the existing drainage system for the Parish of St. Bernard. The map, dated March 1965, was approved by the Office of Public Works. Further, the canal in question is shown to be a public channel and part of the existing drainage system. Therefore, we find that the trial court was correct in finding that the Levee District did have the authority under R.S. 38:113 to assert the legal servitude on plaintiffs' property. The trial court was also correct in finding that the Levee District did not breach any duty owed to the plaintiffs.
The Levee District had the authority to enter onto plaintiffs' property to clean and maintain the canal. The Levee District would be liable to the plaintiffs if any damage was sustained to the property in the course of cleaning the canal. However, the record clearly shows that the property sustained no physical damage. Even though plaintiffs' fence was removed, the Levee District replaced the fence with a new fence at the original location.
In regards to plaintiffs' allegations of mental anguish and inconvenience from the Levee District's use of the servitude, it must be noted that the plaintiffs did not, at any time, live on the property. Plaintiffs could only succeed in their claim for such general damages if there was actual damage to the property. Farr v. Johnson, 308 So.2d 884 (La.App.2nd Cir.1975), writ refused, 310 So.2d 854 (La.1975); Dugas v. St. Martin Parish Police Jury, 351 So.2d 271, 276 (La.App.3rd Cir.1977), writ denied, 353 So.2d 1046 (La.1978). As plaintiffs sustained no damage to their property, plaintiffs' claims for general damages are without merit. The trial court was correct in finding the plaintiffs sustained no property or general damages.
Plaintiffs also argue that the legal servitude established by R.S. 38:113 impairs the merchantability of title since the servitude did not appear on the title examination and is not recorded in the conveyance records of the Parish of St. Bernard. The jurisprudence provides that R.S. 38:113 was not intended to interfere with the merchantability of title to real estate. State ex rel. Bonnabel Land Co. v. Board of Commissioners of Fourth Jefferson Drainage District, 69 So.2d 747 (La.App.1954). In State ex rel. Bonnabel Land Co., the appellate court found that R.S. 38:113 and R.S. 38:1615 did not allow for the legal servitudes granted under 38:113 to be inscribed in the regular conveyance records. In fact, the court issued a mandamus to the *106 clerk of court ordering that inscriptions concerning the 38:113 servitude be removed from certain conveyance certificates. Furthermore, R.S. 38:1615 establishes the duty of the Clerk of Court for every parish to provide a "Drainage District Record Book" in which would be recorded proceedings and matters relating to the drainage district. Therefore, plaintiffs' claims for loss of merchantability of title are also without merit.
Plaintiffs correctly cite Civil Code articles 2517 et seq. which provide that a vendor is liable in warranty to the purchaser when the purchaser's possession of the property is disturbed. See L.S.A.-C.C. articles 2517 et seq. In this case, plaintiffs' possession of the property has not been disturbed. Nor is there a cloud or defect in the title to the property. Had plaintiffs sustained such a loss, then defendants, Gwen and Steve Cavalier, as plaintiffs' vendors, would be liable to plaintiffs for damages. However, as stated previously, plaintiffs did not sustain any recoverable damages from the Levee District's exercise of the servitude granted under R.S. 38:113.
The plaintiffs also seek review of the trial court's finding that the title insurance policy issued by First American Title Insurance Company did not provide coverage to the plaintiffs. The trial record reflects that at the 1979 act of sale, plaintiffs requested that First American Title Insurance Company issue only a mortgagee's policy covering the property in question. The plaintiffs had the option of also purchasing an owners' policy but chose not to do so.
The jurisprudence is clear that title insurance issued only to a mortgagee confers no benefits upon the mortgagor. Trosclair v. Chicago Title Insurance Company, 374 So.2d 197 (La.App. 4th Cir.1979). Therefore, plaintiffs, as the mortgagors in this case, had no rights under the title insurance policy issued by First American Title Insurance Company. Only the mortgagee could sue to recover benefits under the title insurance policy issued. The trial court did not commit error in dismissing plaintiffs' claims against First American Insurance Company.
For the foregoing reasons, the trial court's judgment dismissing plaintiffs' suit is hereby affirmed. All costs to be borne by plaintiffs/appellants.
AFFIRMED.