696 So.2d 163 (1997)
WYNAT DEVELOPMENT COMPANY, An Ordinary Louisiana Partnership, and Wynat Development Corporation
v.
The BOARD OF LEVEE COMMISSIONERS FOR The PARISH OF ORLEANS.
No. 96-CA-1983.
Court of Appeal of Louisiana, Fourth Circuit.
May 28, 1997.
Rehearing Denied July 15, 1997.
*164 John E. Sudderth, Marrero, for Plaintiff/Appellant.
Alan Dean Weinberger, Wade P. Webster, Middleberg, Riddle & Gianna, New Orleans, for Defendant/Appellee.
Before SCHOTT, C.J., and CIACCIO and ARMSTRONG, JJ.
CIACCIO, Judge.
This appeal involves an inverse condemnation action[1] for property appropriated for levee purposes in 1983. Plaintiff, Wynat Development Corporation, appeals from a trial court judgment in favor of defendant, *165 the Board of Levee Commissioners for the Parish of Orleans, sustaining the defendant's exception of prescription and dismissing its suit. We affirm.
The issue raised in this appeal is whether LSA-R.S. 13:5111 or LSA-R.S. 9:5626 is the applicable prescriptive statute in plaintiff's suit for compensation for land taken for levee purposes.
In connection with the Algiers Point Levee Setback Project, defendant levee board, under the authority granted in LSA-R.S. 38:301, formerly Article XVI, Section 6 of the Louisiana Constitution of 1921,[2] adopted a resolution on July 20, 1983, appropriating eight (8) feet of plaintiff's riparian land located along the Mississippi River at Algiers Point. Plaintiff received written notice of defendant's appropriating resolution on August 15, 1983. Defendant, however, did not use plaintiff's land until two (2) years later when it commenced construction of the levee in the summer of 1985. The levee project was completed in December, 1985.
In early 1986, immediately after completion of the project, plaintiff commissioned an appraisal of severance and other damages sustained to the remaining property as a result of the construction work. Plaintiff landowner and defendant levee board could not agree on either the amount of compensation for the 8 feet of land used and destroyed or for the amount of severance and other consequential damages sustained to the remaining property.
On April 16, 1987, plaintiff filed suit seeking compensation for both the lands used and destroyed and for severance and consequential damages sustained to the remaining property by reason of the destruction of a portion of the property as provided by LSA-R.S. 38:301 C(1)(h).[3]
Defendant filed an exception of prescription arguing that the three (3) year prescriptive period under LSA-R. S. 13:5111 was applicable to plaintiff's claim and commenced upon notice of the appropriation, in this case, August 15, 1983, and, therefore, plaintiff's suit filed on April 16, 1987, had prescribed. In opposition to defendant's exception, plaintiff argued that the applicable prescriptive period was two (2) years under LSA-R. S. 9:5626, which specifically provided for the taking of riparian servitudes for levee purposes and commenced from the date of actual taking, use, damage and destruction upon completion of the project when severance and consequential damages could be ascertained. As to its claim, plaintiff argues that the two year prescriptive period commenced running when the project was completed in December 1985, and its suit filed on April 16, 1987, was timely.
In sustaining defendant's exception of prescription, the trial judge stated in his reasons for judgment:
The plaintiff had notice of the appropriation when a letter was delivered to them on 15 August 1983. Suit was filed on 16 April 1987, more than three years later.
The Court concludes that R.S. 13:5111 and Section 3 of the Act creating it apparently and silently repealed R.S. 9:5626 as the defendant states in its brief. [Footnote omitted].
An appropriation is an inverse condemnation, not an expropriation.
The bankruptcy did not interrupt or suspend the prescriptive period. Since the *166 1930's our bankruptcy laws have been amended significantly.
LSA-R.S. 9:5626 was enacted by Acts 1958, Ex.Sess., No. 11, Sec. 1 to provide as follows:
Sec. 5626. Actions and claims for lands and improvements used or destroyed for levees or levee drainage purposes

When lands are appropriated for levees or levee drainage purposes all claims and actions for payment under Article XVI, Section 6 of the Constitution of 1921 for lands and improvements thereon actually used or destroyed for levee or levee drainage purposes shall prescribe within two years from the date on which the property was actually occupied and used or destroyed for construction of levees or levee drainage works, or, in the case of lands and improvements heretofore so occupied and used and destroyed, such prescription shall accrue two years from November 17, 1958. The prescription shall run against interdicts, married women, absentees, minors, and all others now excepted by law. [Emphasis added].
The substance of present LSA-R.S. 13:5111 was first enacted in 1972 by Act. No. 121, Sec. 1 as LSA-R.S. 13:5061 of the Revised Statutes of 1950.[4] It was redesignated as present LSA-R.S. 13:5111 and amended by Acts 1975, No. 434, Sec. 1, which became effective September 12, 1975, to provide in part:
SEC. 5111. Appropriation of property by state, parish, municipality or agencies thereof; attorney, engineering and appraisal fees; prescription
A court of Louisiana rendering a judgment for the plaintiff, in a proceeding brought against the state of Louisiana, a parish, or municipality or other political subdivision or an agency of any of them, for compensation for the taking of property by the defendant, other than through an expropriation proceeding, shall determine and award to the plaintiff, as a part of the costs of court, such sum as will, in the opinion of the court, compensate for reasonable attorney fees actually incurred because of such proceeding. Any settlement of such claim, not reduced to judgment, shall include such reasonable attorney, engineering, and appraisal fees as are actually incurred because of such proceeding. Actions for compensation for property taken by the state, a parish, municipality, or other political subdivision or any one of their respective agencies shall prescribe three years from the date of such taking. [Emphasis added].
Furthermore, Sec. 3 of Acts 1975, No. 434 specifically provided that "[a]ll laws or parts of laws in conflict herewith are hereby repealed."
The two-year prescriptive period provided for in LSA-R.S. 9:5626 clearly conflicts with the later enacted three-year prescriptive period of LSA-R.S. 13:5111. In view of the conflict, we agree with the trial judge that pursuant to the expressed language of Sec. 3 of Acts 1975, No. 434, LSA-R.S. 9:5626 has been repealed.
The three year prescriptive period of LSA-R.S. 13:5111 begins to run from the date of discovery of the taking. Rivet v. State, DOTD, 93-369, (La.App. 5 Cir. 3/16/94) 635 So.2d 295. It is the board resolution that is the legal act which effects the appropriation. See Board of Levee Com'rs of Orleans Levee District v. Aurianne, 229 La. 83, 85 So.2d 39 (1956); cf. Danziger v. U.S., 93 F.Supp. 70 (E.D.La.1950) (passing of Levee Board resolution effects appropriation).
In the instant case, the "taking" occurred when the defendant levee board passed the resolution on July 20, 1983, effecting the appropriation. The resolution specifically identified a map delineating the exact dimensions of the property taken. Plaintiff had notice of the appropriation on August 15, 1983, when it received the certified letter from the defendant levee board, ordering it to vacate the property which had been appropriated. *167 Thus, the three year prescriptive period commenced on the date of the defendant levee board's appropriation on July 20, 1983, or at the very latest, August 15, 1983, the date the plaintiff received the certified letter. We, therefore, agree with the trial court that plaintiff's suit filed on April 16, 1987, had prescribed.
In support of its argument that LSA-R.S. 9:5626 is the applicable prescriptive statute in this case, plaintiff relies on the decision in Givens v. Fifth District Levee Board, 445 So.2d 781 (La.App. 3d Cir.1984). In Givens, the plaintiff sought compensation for property appropriated for levee purposes prior to the effect of the 1974 Constitution. By resolution, plaintiff's property was appropriated on August 15, 1973, and the contractor began work on September 23, 1973. The work was completed on December 13, 1976, and plaintiff filed suit on July 7, 1978. The Levee Board filed an exception of prescription arguing plaintiff's property was "taken" on August 15, 1973, the date the board passed the resolution appropriating the property, and that prescription commenced on that date. The Third Circuit Court of Appeal rejected the Fifth District Levee Board's contention that the resolution which appropriated the property commenced prescription stating:
Our interpretation is that prescription commences on a claim for compensation on the date operations are completed on the property of that claimant. Only upon completion of operations on the claimant's property is the extent of the use and/or destruction ascertainable. We feel that "the date on which the property was actually occupied and used or destroyed" connotes the completion of such operation, use and destruction.
Id. at 783.
While the defendant Fifth District Levee Board appealed from the trial court's denial of its exceptions of prescription and no cause of action, the Third Circuit actually addressed the issue of what method was to be used in determining the compensation to be paid for lands used or destroyed for levee or levee drainage purposes. The Court noted that Article XVI, Section 6 of the Constitution of 1921 provided that the amount of compensation to be paid for land used or destroyed for levee or levee drainage purposes was not to exceed the assessed value of that land for the preceding year. It further noted that when the Constitution of 1974 became effective, Article XVI, Section 6 of the 1921 Constitution was continued in force as a statute only until such time as the legislature would enact a formula for determining the amount of compensation to be paid to owners of land appropriated for levee or levee drainage purposes, citing Article 14, Section 32 of the Constitution of 1974. The Court then explained that the legislature changed the method of determining compensation to be paid for lands used or destroyed for levees or levee drainage purposes by passing Act No. 314 of 1978, which amended LSA-R.S. 38:281 (see, now, LSA-R.S.38:301). Act No. 314 became effective on July 10, 1978. The Court reiterated that by the terms of Article 14, Section 32 of the Constitution of 1974, Article XVI, Section 6 of the Constitution of 1921 continued in force as a statute until July 10, 1978, the effective date of the amending act. The Court then held that because plaintiff had filed suit on July 7, 1978, just three days prior to the effective date of Act No. 314, plaintiff's suit was a claim for payment under Article XVI, Section 6 of the Constitution of 1921, and therefore the applicable prescriptive period was that provided by LSA-R.S. 9:5626.
While plaintiff relies on the decision in Givens as support for its argument that LSA-R.S. 9:5626 is the prescriptive statute applicable to the instant case, we find the inference drawn therefrom suggests otherwise. Following the Court's reasoning in Givens, had Givens filed his suit after July 10, 1978, his claim for payment would not have come under Article XVI, Section 6 of the Constitution of 1921 but rather under LSA-R. S. 38:281, as amended by Act. No. 314 of 1978 (now, LSA-R.S.38:301), and therefore LSA-R.S. 9:5626 would not have been the applicable prescriptive statute.
Plaintiff also argues on appeal that to apply LSA-R.S. 13:5111 as the appropriate prescriptive statute leads to the absurd consequence whereby its right to claim compensation was barred on August 15, 1986, *168 four months before it had a right to demand payment under LSA-R.S. 38:301 C(2)(a).[5] We disagree.
Although the extent of the damages was not ascertainable until completion of the project and compensation not due until one year from that date, these factors did not preclude plaintiff from filing his claim within the prescriptive period. Plaintiff's claim for compensation in this case is analogous to the claim of a plaintiff in a personal injury action who may not know the full extent of his (her) damages but is required to file suit within a year of the date of the accident.
Accordingly, for the above reasons, the judgment of the trial court in favor of the defendant, the Board of Levee Commissioners for the Parish of Orleans, maintaining its exception of prescription and dismissing plaintiff's suit, is affirmed.
AFFIRMED.
SCHOTT, C.J., dissents.
SCHOTT, Chief Judge, dissenting:
By way of introduction, I respectfully submit that my colleagues' characterization of this suit as "an inverse condemnation action" is erroneous. An inverse condemnation occurs when private property is taken for public purposes without any formal proceedings or notice to the owner of the property. This is an action specifically authorized by R.S. 38:301 which recognizes the right of the property owner to be compensated for property taken and damaged by a levee board in the exercise of its right to appropriate property for levee purposes.
My colleagues take the position that R.S. 9:5626 and R.S. 13:5111 are in conflict so that the former statute which was the older one was repealed by the latter with the repealing language of § 3 of Act 434 of 1975. In the first place, I do not agree that these statutes are in conflict.
R.S. 9:5626 narrowly applies to land taken for levee purposes while R.S. 13:5111 applies generally to actions for compensation for property taken by the state or any political subdivision. Subsection (B) of R.S. 13:5111 provides:
The rights of the landowner herein fixed are in addition to any other rights he may have under the constitution of Louisiana and existing statutes, and nothing in this Part shall impair any constitutional or statutory rights belonging to any person on September 12, 1975.
When this statute was enacted a landowner had the right to be compensated for property used or destroyed for levee purposes pursuant to Art. 16 § 6 of the Constitution of 1921 which was continued as a statutory right pursuant to Art. XIV § 16(12) of the Constitution of 1974. Furthermore, a landowner had the statutory rights conferred by R.S. 9:5626. I submit that my colleagues' reliance on the repealer clause of § 3 of Act 434 of 1975 is misplaced with respect to R.S. 9:5626 because under § 1 of the Act the legislature made it quite clear that R.S. 13:5111 would not deprive landowners of rights already in place such as those conferred by R.S. 9:5626.
Additionally, even if there were a conflict between these statutes, the law is clear that the statute that is more specifically directed to the matter at issue must prevail as an exception to the statute that is more general.
Finally, the decision of my colleagues creates an irreconcilable conflict with R.S. 38:301. Pursuant to Subsection (C)(2)(b) of the statute the levee board has one year after the project is completed in which to pay the landowner. Although the levee board adopted its resolution of appropriation in July 1983 and plaintiff received notice of such in August 1983 the project was not completed until December 1985 and the levee board had almost all of 1986 to pay plaintiff. Until the levee board had the obligation to pay plaintiff an action to enforce that obligation would be premature and subject to dismissal. C.C.P. art. 424. Yet my colleagues have decided that plaintiff's suit prescribed on August 15, 1986 under the three year prescription of *169 R.S. 13:5111 even though the levee board's obligation to plaintiff had not yet accrued.
My colleagues dismiss this argument by analogizing plaintiff's situation to that of a plaintiff in a personal injury action who may not know the full extent of his injury within a year of an accident, but who must nonetheless file suit to interrupt prescription. I submit that this analogy is flawed because in the case of the tort action the cause of action comes about when the accident takes place whereas in the present case the cause of action does not arise until the levee board fails to pay; and they were under no obligation to pay for a full year following completion of the project.
When R.S. 13:5111 and R.S. 9:5626 are read in context with R.S. 38:301 the only logical conclusion is that R.S. 9:5626 applies and R.S. 13:5111 has nothing to do with the case.
I would reverse the judgment of the trial court.
NOTES
[1] The action for inverse condemnation provides a procedural remedy to a property owner seeking compensation for land already taken or damaged against a governmental or private entity having the powers of eminent domain where no expropriation has commenced. The action for inverse condemnation is available in all cases where there has been a taking or damaging of property where just compensation has not been paid, without regard to whether the property is corporeal or incorporeal. State Through DOTD v. Chambers Investment Company, Inc., 595 So.2d 598, 602 (La.1992).
[2] Art. XVI, Sec. 6 of the Louisiana Constitution of 1921, was continued as a statute, specifically LSA-R.S. 38:281, by Art. 14, Sec. 16(12) of the Louisiana Constitution of 1974 and redesignated LSA-R.S. 38:301 without significant change, effective July 22, 1985. All are limited to the taking of a riparian land servitude under LSA-C.C. art. 665.
[3] LSA-R.S. 38:301 C(1)(h) provides:

The measure of compensation for lands and improvements taken or destroyed for levee and levee drainage purposes by way of a permanent levee servitude shall be the fair market value of the property taken or destroyed before the proposed use of the property or construction of the levee facilities, without allowing any change in value caused by the construction of the levee facilities. The measure of damages, if any, to the remaining property of the owner by reason of the use or destruction of a portion of the property is determined on a basis of immediately before and immediately after the use or destruction of the property for levee drainage construction, taking into consideration the effects of the completion of the project in the manner proposed or planned.
[4] The preamble to Acts 1972, No. 121 reads as follows:

To amend the Louisiana Revised Statutes of 1950 by adding to Title 13 a new section to be designated Section 5061, relative to the exercise of the power of eminent domain, the rights of a landowner whose property is taken without the exercise of the power of eminent domain, and providing a prescriptive period for such rights.
[5] LSA-R.S. 38:301 C(2)(a) provides:

The compensation due under the provisions of this Subsection shall be paid to the owner within one year after the actual taking, use, damage, or destruction of the property in accordance with the provisions of this Section.